# EXHIBIT A

1  Krystina T. Tran (State Bar No. 270033)
2  LAW OFFICES OF TRAN & ISERHIEN, PC
   17011 Beach Blvd, Suite 830
3  Huntington Beach, CA 92647
   Telephone:  (949) 797-9090
4  Facsimile:   (877) 502-1004
5  krystina@bklawcorp.com

6  Attorneys for Plaintiffs
7  AVELINA CASTILLO and
   DOMINADOR CASTILLO
8

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 25 2018

Sherri R. Carter, Executive Officer/Clerk
By: Stacey Watson, Deputy

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10               FOR THE COUNTY OF LOS ANGELES

11

12  AVELINA CASTILLO and          )   Case No.   **SC129331**
    DOMINADOR CASTILLO,            )
13                                 )
                                   )   [Civil Unlimited]
14          Plaintiffs,            )
                                   )   COMPLAINT FOR:
15      vs.                        )
                                   )
16  WELLS FARGO BANK, N.A., *business entity*  )  1.  VIOLATION OF CALIFORNIA
    *unknown;* BARRETT DAFFIN FRAPPIER  )        CIVIL CODE §2924;
17  TREDER & WEISS, LLP, *business entity*  )   2.  VIOLATION OF CALIFORNIA
    *unknown;* and DOES 1 through 10, inclusive.  )  CIVIL CODE §2923.5;
18                                 )            3.  VIOLATION OF CALIFORNIA
          Defendant(s).            )                CIVIL CODE §2923.6;
19                                 )            4.  PREDATORY LENDING AND
                                   )                VIOLATION OF BUSINESS AND
20                                 )                PROFESSION CODE §17200;
                                   )            5.  DECLARATORY RELIEF; AND
21                                 )            6.  DEMAND FOR ACCOUNTING.
                                   )
22                                 )
                                   )   REQUEST FOR JURY TRIAL
23                                 )

24          COME NOW Plaintiffs, AVELINA CASTILLO and DOMINADOR CASTILLO, for causes

25  of action against Wells Fargo Bank, N.A., business entity unknown; BARRETT DAFFIN

26  FRAPPIER TREDER & WEISS, LLP, business entity unknown; and Does 1 through 10, inclusive

27  (collectively "Defendants"), and each of them, allege and state as follows:

28  ///

18:34:19 2018-05-24                              PLAINTIFFS'S COMPLAINT

**PARTIES**

1.     Plaintiffs ("Plaintiffs" or "Mrs. Castillo" or "Mr. Castillo") are residents of the state of California.

2.     Plaintiffs are informed and believe and based thereon allege that Defendant WELLS FARGO BANK, N.A. (hereinafter "WFB"), is a financial institution of unknown form doing business in the state of California, is the successor or assignee of Wachovia Mortgage, FSB, and is the Master Servicer.

3.   Plaintiffs are informed and believe and based thereon allege that Defendant BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP (hereinafter "BDFTW") is an organization of unknown form doing business in the state of California, and was the entity that initiated non-judicial foreclosure on the Subject Property and caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust, and a Notice of Trustee's Sale.

4.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore, sue these Defendants by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint to allege their true names and capacities when they have been ascertained.

5.     Plaintiffs are informed and believe, and based on such information and belief, allege that at all times mentioned in this Complaint, Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned *infra*, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

6.     Plaintiffs are informed and believe, and on such information and belief, allege that each of said Defendants is, in some manner, legally responsible for the unlawful actions, unlawful policies, and unlawful practices hereinafter alleged, and that Plaintiffs' damages were proximately caused by Defendants. Plaintiffs will seek leave of court to amend this Complaint to set forth the appropriate charging allegations along with the true names and capacities of said Defendants when they have been ascertained.

///

2

7.      Any allegation about acts of any corporate or business Defendant means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or apparent scope of their authority.

## FACTUAL BACKGROUND

8.      Plaintiffs at all times relevant to this complaint were the owner of real property known as 11837 Wagner Street, Culver City, California 90230 (hereinafter "Subject Property").

9.      On or about February 28, 2008, for valuable consideration, Plaintiffs, as borrowers, made, executed and delivered to Wachovia Mortgage, FSB, a written promissory note ("Note") in the amount of $620,000.00.

10.      To secure payment of the principal sum and interest as provided in the Note and as part of the same transaction, Plaintiffs executed and delivered to Wachovia Mortgage, FSB a deed of trust dated on or about February 28, 2008, by the terms of which Plaintiffs conveyed to Wachovia Mortgage, FSB as Lender and to Golden West Savings Association Service Co., a California Corporation, as trustee, the real property described in paragraph 8. Attached hereto as Exhibit "A" is a true and correct copy of the Deed of Trust in favor of Wachovia Mortgage, FSB.

11.      Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued as Does 1 through 10.  Each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right to title or interest in the subject property, or both.

12.      Prior to falling into default, Plaintiffs made timely payments on the mortgage.

13.      On or about March 6, 2017, Defendants initiated non-judicial foreclosure proceedings on the subject property by causing Defendant BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP to record a Notice of Default and Election to Sell Under Deed of Trust. Attached hereto as Exhibit "B" is a true and correct copy of the Notice of Default.

14.      Prior to causing the NOD to be recorded, Defendant WFB failed to contact the Plaintiffs pursuant to California Civil Code Section 2923.55 to assess their financial situation and explore options to avoid foreclosure.

///

///

3

15.    Subsequently, in a letter dated March 10, 2017, Defendant WFB notified Plaintiffs that their "mortgage is currently in foreclosure." Attached hereto as Exhibit "C" is a true and correct copy of the letter dated March 10, 2017.

16.    To avoid a foreclosure auction of their property, Plaintiffs submitted a complete loan modification application to WFB and continued to work closely with WFB and complied with all document requests.

17.    After several months, in a letter dated August 2, 2017, Defendant WFB notified Plaintiffs that they "are not moving forward with a review of the mortgage for assistance." Attached hereto as Exhibit "D" is a true and correct copy of the letter dated August 2, 2017.

18.    Plaintiffs were devastated by WFB's denial of their application, because WFB did not take into account that the Plaintiffs initially defaulted on the loan because of a drastic reduction in income when Mr. Castillo retired from his employment as a teacher.

19.    Plaintiffs thereafter requested a repayment plan agreement as an alternative to a modification. Defendant WFB denied Plaintiffs' request for repayment plan, and demanded the payment of the total arrearage. The reason for the denial of a repayment plan was never memorialized in writing.

20.    On or about December 14, 2017, Plaintiffs submitted a new application for a loan modification due to a change in their circumstance. The "changed circumstance" was due to their adult son moving into the property with them, and contributing financially to the household.

21.    In compliance with WFB's request, Plaintiffs also submitted the contribution letter indicating the Contribution amount, his pay stubs, name of his employer, employment start date, and proof of occupancy. Attached hereto as Exhibit "E" is a true and correct copy of the Contribution Letter submitted to WFB.

22.    Plaintiffs were waiting for a written decision on their new application for a loan modification when Defendants recorded or caused to be recorded, a Notice of Sale on the Plaintiffs' property on or about January 8, 2018 in violation of dual tracking protection afforded to Plaintiff under California law. Attached hereto as Exhibit "F" is a true and correct copy of the Notice of Trustee's Sale recorded by Defendant BDFTW.

4

23.     Plaintiffs can now afford to make their mortgage payments or repayment plan payments because of the financial contribution from their adult son.  However, Defendant WFB still intends to proceed with the foreclosure sale of the property on June 6, 2018.

24.     Both Plaintiffs, who are elderly and over 80 years old, strongly believe that Defendant WFB refused to grant them a modification or repayment plan because Plaintiffs' property is worth considerably more than the loan balance owed to WFB.  In fact, Plaintiffs' equity in the subject property exceeds $400,000.00, and Defendant WFB is aware of this fact.  WFB may benefit from the financial windfall of an unlawful foreclosure sale by purchasing the property at a price lower than the appraised value of the property.

## FIRST CAUSE OF ACTION

### (Violation of Cal. Civ. Code §2924 as against all Defendants)

25.     Plaintiffs repeat, re-allege, and incorporate by reference all of the above allegations contained in paragraphs 1 through 24 as though fully alleged and set forth herein.

26.     Pursuant to Cal. Civ. Code §2924(a)(6), under the California Homeowner's Bill of Rights ("HBOR"):

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust or the designated agent of the holder of the beneficial interest.

27.     Defendants BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP is not the holders of the beneficial interest in Plaintiffs' Deed of Trust, the original trustee or the properly substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest; therefore, they may not engage in foreclosure procedures against Plaintiffs' property.

28.     Golden West Savings Association Service Co., a California corporation ("Golden West") was named as Trustee under the Deed of Trust dated February 28, 2008.

29.     Defendants BDFTW was the entities that initiated non-judicial foreclosure on the Subject Property and caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust, and a Notice of Trustee's Sale.  There is no evidence to show that Golden West and BDFTW

5

1   are one in the same.  Based on information and belief, BDFTW was never properly substituted as the

2   new Trustees under Plaintiffs' Deed of Trust.  For these reasons and those set forth herein,

3   Defendant BDFTW had no authority or standing to record the Notice of Default and Notice of Sale.

4   Therefore, those documents are **void**.

5         30.   Consequently, the Notice of Default, which lists Defendant BDFTW as "Trustee,"

6   and the Notice of Sale which lists BDFTW as "Trustee", which were executed and recorded by an

7   improper and invalid trustee, are void and must be rescinded, and **no sale may take place based on**

8   **these defective documents**.

9         31.   Defendants' wrongful acts and omissions violate HBOR, specifically Cal. Civ. Code

10   §2924(a)(6); therefore, foreclosure activity must cease immediately, and Plaintiffs are entitled to all

11   the rights and remedies set forth in HBOR.

12   

**SECOND CAUSE OF ACTION**

13   **(Violation of Cal. Civ. Code §2923.5 as against all Defendants)**

14         32.   Plaintiffs repeat, re-allege, and incorporate by reference all of the above allegations

15   contained in paragraphs 1 through 31 as though fully alleged and set forth herein.

16         33.   Should the Court find that Defendants are in fact the holders of the beneficial interest

17   in Plaintiffs' Deed of Trust, the original trustee or the properly substituted trustee under the deed of

18   trust, or the designated agent of the holder of the beneficial interest, Defendants authorized and/or

19   initiated foreclosure proceedings without first properly notifying Plaintiff, as was their duty pursuant

20   to Cal. Civ. Code §2923.5.

21         34.   Defendants improperly recorded the Notice of Default because they did not comply

22   with the publishing and posting requirements of Cal. Civ. Code §2923.5(a)(1)(2), by failing to notify

23   Plaintiffs in person or by telephone in order to assess their financial position and explore options that

24   would avoid foreclosure.  In addition, Defendants did not advise Plaintiffs of the right to request a

25   subsequent meeting, and there was no meeting that occurred within the 14 day requirement.

26   Furthermore, Defendants did not provide Plaintiffs with a telephone number to the United States

27   Department of Housing and Urban Development to find a HUD-certified housing counseling agency

28   as required by Cal Civ. Code §2923.5.

6

35.    Defendants, and each of them, as described more fully *supra*, failed to make any contact with Plaintiffs to assist, nor did they wait the requisite 30 days after such contact before instituting foreclosure proceedings by recording the Notice of Default.

36.    There is no evidence to show that Golden West and BDFTW are one in the same. Therefore, Defendants failed to record a valid Substitution of Trustee, or give Plaintiffs notice of any such substitution or assignment.

37.    The Defendants' failure to comply with California's foreclosure laws greatly prejudiced the Plaintiffs' right of un-encumbering their property or refinancing the property because they were not given proper notice of the impending foreclosure.

38.    As a result of Defendants' wrongful acts and omissions, Plaintiffs were precluded from properly curing the default in the mortgage and also from all the rights and benefits that go along with California foreclosure laws.

39.    Plaintiffs have satisfied any implied requirement at equity to tender any unpaid amounts in that they have submitted a complete loan modification application, and are ready and willing to work out an agreement with WFB, which would allow them to make more affordable payments and keep their home.

40.    Plaintiffs desire a judicial determination and declaration of the parties' respective rights and duties; specifically, that Defendants failed to comply with the statutory requirements relating to the Notice of Default and Notice of Trustee's Sale. Judicial declaration is appropriate at this time so that the Court may determine the rights and duties of the parties before the Subject Property is sold at an imminent trustee sale.

41.    Defendants intend to sell, and unless lawfully restrained, will indeed sell or cause to be sold the Subject Property that would result in irreparable harm to Plaintiffs, who will lose their home with no right to redeem. Furthermore, Plaintiffs will lose the equity in their property to WFB.

42.    An imminent sale of the Subject Property is wrongful and should be enjoined by virtue of the facts alleged above and below. Plaintiffs have no other plain, quick, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at this time to

7

1  prevent irreparable loss to Plaintiffs' interests until such time as the Court makes a determination as

2  to the rights and duties between the parties.

3       43.    In light of the foregoing, an actual controversy exists between Plaintiffs and

4  Defendants concerning their respective rights and duties pertaining to the Subject Property that could

5  determine whether an imminent trustee sale is lawful.

6       44.    Plaintiffs are not required to allege tender for a violation of <u>California Civil Code</u>

7  <u>§2923.5</u>.

8  **THIRD CAUSE OF ACTION**

9  **(Violation of Cal. Civ. Code §2923.6 as against all Defendants)**

10       45.    Plaintiffs repeat, re-allege, and incorporate by reference all of the above allegations

11  contained in paragraphs 1 through 44 as though fully alleged and set forth herein.

12  **Dual Tracking**

13       46.    The HBOR provides a private right of action against loan servicers and trustees for

14  their unlawful conduct during foreclosure proceedings, as well as during the loan modification

15  application submission and review processes. The HBOR prohibits "dual track foreclosure",

16  whereby lenders and/or loan servicers continue foreclosure proceedings with borrowers whose loans

17  are simultaneously being reviewed for a loan modification.

18       47.    Pursuant to Cal. Civ. Code §2923.6(c):

19  
20          If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

21  
22  

23       48.    In the instant case, Plaintiffs had a complete modification application pending and in

24  review with WFB; therefore, Cal. Civ. Code §2923.6 applies and protects the Plaintiffs.

25       49.    WFB is therefore precluded from simultaneously exercising its foreclosure power.

26  However, WFB failed to comply with the HBOR and has continued with the foreclosure

27  proceedings.

28  ///

8

PLAINTIFFS'S COMPLAINT

50.     As such, WFB unlawfully violated the HBOR and denied Plaintiffs their rights under California law.  It was the legislature's intent under Cal. Civ. Code §2923.6(a) to help ensure that a workout be offered where the profit of a workout would exceed that of foreclosure.  The best way to achieve that endeavor is to ensure that the modification review process is not hindered by the same party who is executing the review to simultaneously exercise their foreclosure power.

51.     Unfortunately, this is precisely what happened here:  WFB was at all times relevant, in control of the modification review process, and it concurrently exercised its foreclosure power.  This is the epitome of Dual Tracking, which is expressly prohibited by the HBOR.

**Failure to Provide a Denial Letter**

52.     Upon reviewing Plaintiffs' loan modification application submitted on or about December 14, 2017, Defendant WFB failed to send a denial letter to the Plaintiffs, failed to provide the amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the loan modification and instructions regarding how to appeal the denial, as was its duty pursuant to Cal. Civ. Code §2923.6.

53.     In addition, Defendant WFB failed to inform Plaintiffs that they have the legal right to request and obtain all of the inputs used in the net present value calculation, as was its duty pursuant to Cal. Civ. Code §2923.6.

54.     Defendant WFB also failed to provide a list of steps Plaintiffs must take in order to be considered for other foreclosure prevention alternatives for which Plaintiffs may be eligible, as was its duty pursuant to Cal. Civ. Code §2923.6.

55.     Plaintiffs desire a judicial determination and declaration of the parties' respective rights and duties; specifically, that Defendants failed to comply with the statutory requirements relating to the denials of their modification application(s).  Judicial declaration is appropriate at this time so that the court may determine the rights and duties of the parties before the Subject Property is sold at an imminent trustee sale.

56.     Defendants intend to sell, and unless lawfully restrained, will indeed sell or cause to be sold the Subject Property that would result in irreparable harm to Plaintiffs, who will lose their home with no right to redeem.  The will also may lose the equity in their property.

9

57.     An imminent sale is wrongful and should be enjoined by virtue of the facts alleged above and below.  Plaintiffs have no other plain, quick, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs' interests until such time as the Court makes a determination as to the rights and duties between the parties.

58.     In light of the foregoing, an actual controversy exists between Plaintiffs and Defendants concerning their respective rights and duties pertaining to the Subject Property that could determine whether an imminent trustee sale is lawful.

### FOURTH CAUSE OF ACTION

### (Violation of California Business and Professions Code §17200 as against all Defendants)

59.     Plaintiffs repeat re-allege, and incorporate by reference all of the above allegations contained in paragraphs 1 through 58 as though fully alleged and set forth herein.

60.     Plaintiffs are informed, believe and thereon allege that since the inception and throughout this controversy, Defendants committed acts of unfair competition as defined by Business and Professions Code § 17200, by engaging in acts as described *supra*; namely, Defendants' policies and practices described above violate all the statutes as previously listed and Cal. Civ. Code §1709 and consequently constitute an unlawful business act or practice within the meaning of Business and Professions Code § 17200.

61.     In determining whether a business act or practice is unfair, the court weighs the utility of the Defendants' conduct against the gravity of the harm to the Plaintiffs.

62.     The actions of Defendants, and each of them, in filing the Notice of Default without complying with California's foreclosure laws violates the Business and Professions Code § 17200.

63.     Furthermore, the actions of Defendants, and each of them, in failing to comply with California's foreclosure laws including but not limited to "dual tracking" violates the Business and Professions Code § 17200.

64.     The harm to Plaintiffs and to members of the general public outweighs the utility of Defendants' policy and practices and consequently constitute an unlawful business act of practice within the meaning of Business and Professions Code § 17200.

10

65.     Further, the foregoing conduct threatens an incipient violation of a consumer law, and/or violates the policy and spirit of such law or otherwise significantly threatens or harms competition. Defendants' practices described *supra* are likely to mislead the general public, and therefore, constitute an unlawful and unfair business act of practice within the meaning of Business and Professions Code § 17200.

### FIFTH CAUSE OF ACTION

### (Declaratory Relief)

66.     Plaintiffs repeats, re-alleges, and incorporates by reference all of the above allegations contained in paragraphs 1 through 65 as though fully alleged and set forth herein.

67.     An actual controversy has arisen and now exists between Plaintiff and Defendants WFB and BDFTW regarding their respective rights and duties, in that Plaintiffs contends that Defendant conducted unlawful foreclosure action.

68.     Plaintiff requests that this Court find the purported power of sale contained in the Subject Loan of no force and effect at this time. Defendant WFB's actions in the processing and handling of the subject loan modification applications, and BDFTW's actions by recording the NOD and NOS, violated numerous state and federal laws designed to protect borrowers. The unlawful actions have directly caused Plaintiff to be at an equitable disadvantage to Defendants WFB and BDFTW.

69.     Further, Defendants' actions have been willful, knowing and malicious. As a result of Defendants WFB and BDFTW's actions, Plaintiff has suffered damages according to proof, stands to suffer irreparable harm, and seeks declaratory relief that Defendant WFB's purported power of sale is void and has no force or effect against the Subject Property. Plaintiffs will most definitely lose over $400,000 equity in their property if the property is sold in a foreclosure auction by the Defendants.

### SIXTH CAUSE OF ACTION

### (Demand for Accounting)

70.     Plaintiffs repeats, re-alleges, and incorporates by reference all of the above allegations contained in paragraphs 1 through 69 as though fully alleged and set forth herein.

11

71.     The elements for a claim for accounting are:  (1) a fiduciary relationship or other circumstances appropriate to the remedy, and (ii) a balance due from Defendants to Plaintiffs that can only be ascertained by an accounting.  Witkin, Cal. Procedure 5th ed. (2008) Pleadings, Sec. 820.

72.     Defendants hold themselves out to be Plaintiffs' creditors and mortgage servicers.  As a result of this purported relationship with Plaintiffs, said Defendants have a duty to Plaintiffs to properly account for payments made by Plaintiffs.  Moreover, a fiduciary relationship between the parties is not required to state a cause of action for accounting.  All that is required is that some relationship exists that requires an accounting.

73.     Plaintiffs have made mortgage payments to Defendants since 2008.  Plaintiffs believe and are informed that the amount claimed due and owing at the time of the recording of the Notice of Default of $25,908.67 is incorrect.

74.     Plaintiffs have a reasonable good faith belief that the claimed arrearages include improper excess charges and fees imposed by all Defendants without Plaintiffs' knowledge or consent, which are not allowed by law.

75.     It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein.  Therefore, these monies due should be credited back to Plaintiffs in full.

76.     The actual amount of the arrearages on Plaintiffs' loan and the actual amount of money due from Plaintiffs to Defendants is unknown to Plaintiffs, and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor, and against each Defendant, jointly and severally, as it applies to all their causes of action, as follows:

A.     That Plaintiffs be awarded compensatory damages according to proof;

B.     That Plaintiffs be awarded statutory or treble damages as prescribed by statute;

C.     That the Court issue a declaration of the rights and duties of the parties; specifically, that Defendants have no right to conduct the sale, because the Defendants have not followed the required sale procedures required under California's foreclosure laws.

12

PLAINTIFFS'S COMPLAINT

D.    That the Court issue a temporary restraining order, a preliminary injunction, and a permanent injunction restraining the Defendants and their agents, attorneys, successors, and representatives and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the Subject Property either under the power of sale in the deed of trust or by foreclosure action.

E.    That Plaintiffs be awarded reasonable attorneys' fees and costs incurred in this action, and interest at the prevailing legal rate of interest on any damages to the extent permissible under law;

F.    That Plaintiffs be awarded such other relief as this Court may deem proper and just.

Dated: May 23, 2018                          LAW OFFICES OF TRAN & ISERHIEN, PC

By:  _____
KRYSTENA T. TRAN
Attorneys for Plaintiffs
AVELINA CASTILLO and
DOMINADOR CASTILLO

13

EXHIBIT A

This page is part of your document - DO NOT DISCARD

**20080381321**   Pages: 019

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

03/06/08 AT 08:00AM

Fee: 73.00
Tax: 0.00
Other: 0.00
Total: 73.00

Title Company

TITLE(S) :

L E A D   S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.   Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED



-LAWYERS TITLE

RECORDING REQUESTED BY:
WACHOVIA MORTGAGE, FSB

WHEN RECORDED MAIL TO:
WACHOVIA MORTGAGE, FSB
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:0048131961

NOTE AMOUNT: $620,000.00

03/05/08

20080381321

72142163.

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY
PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS
$775,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.     DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
       (A)   Security Instrument. This Deed of Trust, which is dated February 28, 2008, will be called the
"Security Instrument."

       (B)   Borrower. DOMINADOR R CASTILLO AND AVELINA C CASTILLO, HUSBAND AND WIFE
sometimes will be called "Borrower" and sometimes simply "I" or "me."

       (C)   Lender. WACHOVIA MORTGAGE, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be
called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of
the United States. Lender's address is 4101 Wiseman Blvd., San Antonio, TX 78251 .

003

LENDER'S USE ONLY

SD001A (2004-03-3)
DEFERRED INTEREST                                        Page 1                        CA

1981

(D) Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $620,000.00, plus accrued and deferred interest and such other amounts as stated in the Note I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by April 1, 2038 ("Maturity Date").

(E) Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) Person. Any person, organization, governmental authority or other party will be called "Person."

(H) Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and Golden West Savings Association Service Co., A California Corporation is the "Trustee."

II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   DESCRIPTION OF THE PROPERTY
I give Trustee rights in the Property described below:

(i)   The Property which is located at 11837 WAGNER ST, CULVER CITY, CA 90230-5131 The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

SD091B (2004-03-3)
DEFERRED INTEREST                                      Page 2                                      CA

1981

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   PAYMENTS FOR TAXES AND INSURANCE

(A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)                                                        Page 3                                                        CA

(B)    Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)                                     Page 4                                     CA

<span style="background:black">████</span>1981

3.    APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)                                    Page 5                                    CA

1981

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

8.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE
      OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.   LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-05-3)                                                                                   CA

 1981

**10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

   **(A)   Borrower's Obligations**

   Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

   Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

   **(B)   Lender's Rights**

   Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

   Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

   Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

   Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.   MAXIMUM LOAN CHARGES**

   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD0011I (2004-03-3)

CA

 1981

**13.** LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.** NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 11837 WAGNER ST, CULVER CITY, CA 90230-5131. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.** GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.** BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.** LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD001I (2004-03-3)

CA8 OU8011N51

Page 9

CA

1981

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

19.   CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.   LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.   WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

22.   CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

23.   MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)

CA

1981

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

25.     FUTURE ADVANCES
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)

Page 11

CA

26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

27.    SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)

CA

█████1981

**28.     RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

    It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

    If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

    Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

    If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property  The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

    The sale of the Property may be postponed by or at the direction of Lender  If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

    Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.     RECONVEYANCE**

    Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.     STATEMENT OF OBLIGATION**

    Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-3)

Page 13

CA

1981

**31.    (    )   QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument, and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

SD001N (2004-03-3)                                       Page 14                                            CA

1981

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____    (Seal)
AVELINA C CASTILLO

_____    (Seal)
DOMINADOR R CASTILLO

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)        [AF] (2004-03-1))        Page 15                        CA
                         [B0] (2004-03-1))

## ACKNOWLEDGMENT

State of California
County of _Los Angeles_ }

On _February 28, 2008_, before me, _Karla C Narvaez, Notary Public_
(insert name and title of the officer)

personally appeared _Avelina C Castillo Dominador F Castillo_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

KARLA C. NARVAEZ
Commission # 1609344
Notary Public - California
Los Angeles County
My Comm. Expires Nov 22, 2009

# WACHOVIA MORTGAGE, FSB

## E X H I B I T "A"

### LEGAL DESCRIPTION

LOAN NO. ████981

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF LOS ANGELES STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.

File No: 02214216

## EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 18 of Tract No. 21110, in the City of  Los Angeles, County of Los Angeles, State of California, as per Map Recorded in Book 568 Page(s) 39 and 40 of Maps, in the office of the County Recorder of said County.

Assessor's Parcel Number: 4218-004-046

Page 3

EXHIBIT B

 

This page is part of your document - DO NOT DISCARD

## 20170255038



Pages:
0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

03/06/17 AT 08:00AM

| | |
|---|---|
| FEES: | 34.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 34.00 |

 



LEADSHEET



201703060130057

00013434639



006183037

SEQ:
01

SECURE - 8:00AM




 THIS FORM IS NOT TO BE DUPLICATED  090829648 RP

Recording requested by:
LSI Title Company

When Recorded Mail To:
BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320

APN #: 4218-004-046
Property Address:
11837 WAGNER ST
CULVER CITY, CALIFORNIA  90230

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
DFF20090015003354

Space above this line for Recorder's use only:

Trustee Sale No.: 20090015003354        Title Order No.: 090829648

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES
ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个摘要簿页
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI
LIỆU NÀY

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you
may have the legal right to bring your account in good standing by paying all of your past due
payments plus permitted costs and expenses within the time permitted by law for reinstatement of your
account, which is normally five business days prior to the date set for the sale of your property. No sale
date may be set until approximately 90 days from the date this Notice of Default may be recorded
(which date of recordation appears on this notice).

This amount is $309,354.66 as of 03/02/2017 and will increase until your account becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage. If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order
to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a
condition of reinstatement that you provide reliable written evidence that you paid all senior liens,

FCUS_NoticeOfDefault.rpt - Record - (05/14/2015) - Ver. 11                                    Page 1 of 3

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20090015003354        Title Order No.: 090829648

property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.
c/o BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No.: 20090015003354          Title Order No.: 090829648

NOTICE IS HEREBY GIVEN THAT: BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 02/28/2008, executed by DOMINADOR R. CASTILLO AND AVELINA C CASTILLO, HUSBAND AND WIFE, as Trustor, to secure obligations in favor of WACHOVIA MORTGAGE, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, as Beneficiary Recorded on 03/05/2008 as Instrument No. 20080381321 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $620,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occured in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 05/01/2010 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under said Deed of Trust and/or its loan servicer hereby declare(s) all obligations secured thereby immediately due and payable, invoke(s) the power of sale, under said Deed of Trust, and elect(s) to sell the property described therein in satisfaction of those obligations without prejudice to any other default remedies permitted by applicable law.

DATED: 03/02/2017

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee for Beneficiary

By: _____
Craig Zinda, Associate Attorney

EXHIBIT C



Fax: 1-866-278-1179
Telephone: 1-800-416-1472
Correspondence: PO Box 10335
Des Moines, IA 50306
Hours of Operation:
Monday-Friday, 8:00 a.m. to 9:00 p.m. Central Time

March 10, 2017

Loan Number:       ******8329
Property Address:     11837 WAGNER ST, CULVER CITY, CA 90230

Subject: Notice Pursuant to Cal. Civ. Code § 2924.9

Dear DOMINADOR CASTILLO:

We're writing to let you know that your mortgage is currently in foreclosure. However, you may still have an
opportunity to keep your home or prevent foreclosure, even if you previously indicated that you do not wish to
stay in your home.

**We urge you to avoid foreclosure if possible**
Any number of circumstances might have made it difficult for you to make your monthly mortgage payments, such
as a job loss, or unexpected expenses. Whatever your current situation, it may still be possible for you to avoid
foreclosure.

**You still may have time – if you act immediately**
We previously sent you a letter informing you about available mortgage assistance options to avoid foreclosure,
along with a Customer Information Package for you to complete and return to us to be evaluated for these options.
If you did not receive these documents, no longer have them, wish to receive new documents, or if you did not
return the required information, please contact  the Home Preservation Department immediately at the phone
number above for a new package. Please keep in mind that we cannot evaluate you for mortgage assistance options
until we receive the completed package.

**Don't delay**
We are here to help you, but we must hear from you. If you want to keep your home, or if you no longer wish to
stay in your home but want to avoid foreclosure, please call the Home Preservation Department today at the phone
number above to discuss your options.

Sincerely,

Wells Fargo Home Mortgage

This communication is an attempt to collect a debt and any information obtained will be used for that purpose.
However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this
notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only
exercise our rights as against the property.

The California Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act
require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They
may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use
false or misleading statements or call you at work if they know that you may not receive personal calls at work.
For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.
Collectors may contact another person to confirm your location or enforce a judgment. For more information about
debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

EXHIBIT D

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

Page 1 of 2



August 2, 2017

DCML1TOTGL 000011
ıllııllıllllıllıllıllıllıllllllllllllllllllllılllll
AVELINA C CASTILLO
DOMINADOR R CASTILLO
11837 WAGNER ST
CULVER CITY, CA 90230

| Account Information | |
|---|---|
| Fax: | 1-866-278-1179 |
| Telephone: | 1-866-234-8271 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Mon - Fri, 6 AM - 10 PM |
| | Sat, 8 AM - 2 PM CT |
| Loan Number: | ▓▓▓▓ 8329 |
| Property Address: | 11837 Wagner St |
| | Culver City CA 90230 |

PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the above referenced account, Wells Fargo Home Mortgage is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).
Your decision to discuss workout options with Wells Fargo Home Mortgage is strictly voluntary. You are not obligated to pursue any workout options discussed with us. At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

Subject: Your request for mortgage assistance

Dear Avelina C Castillo & Dominador R Castillo:

We're responding to your recent outreach to us. At this time, we are not moving forward with a review of the mortgage for assistance.

We based our decision on a review of the mortgage history, the recent information you provided us, and the current circumstances surrounding the mortgage.

**What you need to know about foreclosure**
If the mortgage has been or will be referred to foreclosure, that process may move forward now.

**We're here for you**
If you have any questions about the information in this letter, please call us at 1-866-234-8271.

Home Preservation Department
Wells Fargo Home Mortgage

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include your account number with all correspondence.

HPP05 709-1941

## Account Information

Loan number: ▮▮▮▮8329

Property address: 11837 Wagner St
Culver City CA 90230

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

EXHIBIT E

DOMINIC CASTILLO
11837 WAGNER ST
CULVER CITY, CA 90230

12/13/2017

TO WHOM IT MAY CONCERN

CONTRIBUTION LETTER - LOAN NUMBER ████ 8329

I, Dominic Castillo contribute Two Thousand Dollars ($2,000.00) per month towards the household income of my parents (Dominador and Avelina Castillo).

Yours sincerely,

Dominic Castillo

EXHIBIT F

 This page is part of your document - DO NOT DISCARD 



**20180020276**




Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/08/18 AT 08:00AM

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 102.00 |

 



LEADSHEET



201801083310018

00014760330



008831542

SEQ:
01

SECURE - 8:00AM




THIS FORM IS NOT TO BE DUPLICATED  090829648 DL



Recording requested by:
LSI Title Company

When Recorded Mail To:
BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
(866) 795-1852
APN #: 4218-004-046
Property Address:
11837 WAGNER ST
CULVER CITY, CALIFORNIA 90230

||||||||||||||||||||||||||||||||
NOTS20090015003354

Space above this line for Recorder's use only

Trustee Sale No. : 20090015003354    Title Order No.: 090829648    FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

ATTENTION RECORDER: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 02/28/2008. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 03/05/2008 as Instrument No. 20080381321 of official records in the office of the County Recorder of LOS ANGELES County, State of CALIFORNIA.
EXECUTED BY:        DOMINADOR R CASTILLO AND AVELINA C CASTILLO, HUSBAND AND WIFE,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:    03/02/2018    TIME OF SALE:    11:00 AM
PLACE OF SALE:    BY THE FOUNTAIN LOCATED AT 400 CIVIC CENTER PLAZA, POMONA, CA 91766.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
11837 WAGNER ST, CULVER CITY, CALIFORNIA 90230
APN#:        4218-004-046

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied.
FCUS_NoticeOfTrusteeSale.rpt - Revised - 04/01/2016 - Ver-19                                    Page 1 of 2

Trustee Sale No.: 20090015003354       Title Order No.: 090829648       FHA/VA/PMI No.:

regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $868,712.64. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.servicelinkASAP.com for information regarding the sale of this property, using the file number assigned to this case 20090015003354. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
AGENCY SALES & POSTING
714-730-2727
www.servicelinkASAP.com

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee
20955 Pathfinder Road, Suite 300
Diamond Bar, CA 91765
(866) 795-1852

BY: Manuel Loeza                                        Dated: 01/04/2018

Manuel Loeza
Foreclosure Specialist



SHERRI R. CARTER
EXECUTIVE OFFICER / CLERK

SANTA MONICA COURTHOUSE
1725 MAIN STREET
SANTA MONICA, CA  90401

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF LOS ANGELES

# Case Management Conference Date

Case:              SC129331

Date:              Wednesday, November 21, 2018

Time:              8:30 am

Department:        O

Judge:             Lisa Hart Cole

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number  **SC129331**

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Lisa Hart Cole | O | 208 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | *Provisional complex (non-class action) case assignment pending complex determination | 309 | Supervising Judge CCW |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on ___25 May 2018___
(Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By ___Stacey Watson___, Deputy Clerk

LACIV 190 (Rev 12/17)        **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**